UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

N.I.P.P. ROYAL OAK, LLC,

    Plaintiff,

                                                           Civil No. 05-71320
                                                           Hon. John Feikens

    v.

CITY OF ROYAL OAK,

    Defendant.
_____/

**OPINION AND ORDER FINDING PLAINTIFF LACKS STANDING AND GRANTING LEAVE TO FILE AN AMENDED COMPLAINT**

At the settlement conference November 20, I asked both parties to submit supplemental briefing addressing the issue of whether N.I.P.P. Royal Oak, LLC (NIPP) divested itself of standing to bring its claims against the City of Royal Oak (City) when it sold its interest in the Royal Oak Music Theater. I have received this briefing, and I hereby find NIPP cannot bring these claims at this time because it sold its right to do so. However, if NIPP obtains from Worldwide Entertainment-ROMT, LLC (Worldwide) the right to bring this suit, then it may file an amended complaint indicating it owns the right to bring this suit and may continue this litigation.

**I.    FACTUAL BACKGROUND**[1]

NIPP was the possessor of a liquor license issued by the Michigan Liquor Control Commission (MLCC). These licenses are granted by the MLCC to particular entities and may not be transferred from the licensee to another entity without permission of the MLCC. Mich. Comp. Laws Ann. § 436.1529(1) (West 2007). Attached to that liquor license was a dance-entertainment permit[2] issued by MLCC that permitted NIPP to have dancing at its establishment, the Royal Oak Music Theater. City refused to approve a plan of operation that permitted dancing at this Theater, however, which allegedly effectively prevented NIPP from utilizing the license granted it by MLCC. NIPP claims that because operating the Theater without being able to use its dance permit was less profitable than it wanted, it sold its interest in the Theater to Worldwide. A purchase agreement was signed between these parties on April 23, 2004, and a bill of sale was executed September 14 of that same year. The bill of sale purported to convey "all of the assets, rights, and interests of every conceivable kind or character whatsoever, whether tangible or intangible, that on the Closing Date are owned by [NIPP] or in which [NIPP] has an interest of any kind related to the Business or the Location." (Def't Supp. Br. Ex. A ¶ 1.1.) Specifically excluded later in that paragraph are cash and bank accounts. (Id.) However, in the section marked "Excluded Assets," the agreement says there are "NONE." (Id. at ¶ 1.5.) The agreement specifically includes the license as an asset that is being transferred.

---

[1] I have substantially abbreviated the factual background in this case so that only facts relevant to this question are included. A more thorough background is given in my previous opinion in this case. N.I.P.P. Royal Oak, LLC et al. v. City of Royal Oak, 420 F. Supp.2d 791 (E.D. Mich. 2006).

[2] For brevity's sake, I will refer to the "dance-entertainment permit" as a "dance permit" in this opinion.

(Id. at p. 1 Recital B ("Seller desires to sell and Purchaser desires to purchase Seller's interest in the 'Purchased Assets' ... including the transfer by Seller to Purchaser of the MLCC License and the MLCC Permit used in connection with the Business....").)

NIPP brought this action against City on April 5, 2005. Pending before me at this time are two motions regarding discovery issues and a motion for summary judgment, but I am obligated to first address the issue of whether the parties have standing to be before me.

### III.  ANALYSIS

1.  The Question at Issue: Does NIPP presently have standing to bring the case?

The Sixth Circuit has clearly stated that the only entity who can bring a procedural due process claim regarding a state-issued liquor license is the "holder" of the license. Wojcik v. City of Romulus, 257 F.3d 600, 609 (6th Cir. 2001) ("Michigan courts have held that the holder of a liquor license has a constitutionally protected interest and is therefore entitled to proper proceedings prior to making decisions regarding renewal or revocation."). I cited this language in my opinion on the 12(b)(6) motion in this case in finding that several other parties did not have standing to make claims regarding the license. N.I.P.P. Royal Oak, LLC et al. v. City of Royal Oak, 420 F. Supp.2d 791, 796 (E.D. Mich. 2006) ("The Sixth Circuit has recognized that in Michigan only the holder of a liquor license has a protected property interest in the license.... Accordingly, the non-licensee Plaintiffs lack standing to assert an injury to this property interest."); see also id. at 797 ("Only Plaintiff NIPP Royal Oak as the licensee has standing to bring claims predicated on a property interest in the license."). All of these statements were made before I was presented with the language of the Purchase Agreement and Bill of Sale through which NIPP sold its interest in the Royal Oak Music Theater to Worldwide, which was

first provided to this Court attached to City's supplemental brief on January 2, 2007.

Before continuing with the analysis any further, it is important to highlight the specific question of standing before this Court: whether NIPP assigned its claims against City to Worldwide. There is no question that NIPP at one point had standing to bring these claims: NIPP held the license at the time this Court previously indicated that a due process violation may have occurred, that being December 2002 to January 2003, and that if it had made the claims at that time it would have had standing.[3] NIPP no longer holds the license and did not hold it at the time this case was brought.[4] Thus, the question is which of the two entities has standing to sue the City: NIPP or Worldwide. My previous analysis indicates that one of these entities has standing.

2.      Arguments of the Parties

Plaintiff argues that it should have standing to bring these claims. Its argument is based

---

[3]Defendant argues that Plaintiff cannot bring these claims because it has suffered no damages, but its argument fails to destroy NIPP's standing at this point. Defendant's reason why Plaintiff cannot bring these claims is that it cannot show that the value it would have received from the sale of its business and license would have been any higher had it been able to use the dance permit because the MLCC could have refused to allow the dance permit to be transferred to a purchaser. (Def't Supp. Br. 5-6.) While this argument at first glance goes not to damages but to standing, it is critical for the constitutional standing inquiry as well because if damages cannot be recovered, it is difficult to see how the constitutional requirement of redressability is met. The argument fails to destroy the redressability requirement, however, as Plaintiff could still assert and potentially recover damages for lost profits in the time it operated the Theater and was unable to utilize its dance permit even if it could not recover anything for a diminished sale price. Because this argument cannot affect the present standing inquiry, this Court makes no finding on the issue of whether Plaintiff could recover any damages for a diminished sale price at this time.

[4]Though NIPP has made no statement regarding the language in the Purchase Agreement and Bill of Sale provided by City in its supplemental brief, since City obtained the records from the MLCC I take judicial notice that these are the true documents of the transaction. (Def't Supp. Br. 1.)

upon general legal principles as well as the incentives created from a decision going the other way. According to Plaintiff, if I find that a plaintiff such as NIPP cannot bring these claims after selling its license, then it is impossible for a plaintiff to mitigate damages, and liquor licensees will be forced into situations where they must continue to operate despite the fact they are losing money in order to ensure they do not lose the ability to litigate their constitutional rights. Plaintiff cites one case where the Seventh Circuit heard an appeal of a former liquor license owner making a claim against the state who had sold his license before bringing the action, but the issue of standing was not raised on appeal in that case. (Pl. Supp. Br. 4 citing Reed v. Village of Shorewood, 704 F.2d 943 (7th Cir. 1983).)

   Defendant in turn argues that Plaintiff has no standing. Its argument primarily relies on the contractual language. The contract states that "all of the assets, rights, and interests of every conceivable kind or character whatsoever, whether tangible or intangible, that on the Closing Date are owned by [NIPP] or in which [NIPP] has an interest of any kind related to the Business or the Location" are sold from NIPP to Worldwide Entertainment. (Def't Supp. Br. Ex. A ¶ 1.1.) No assets other than bank accounts and cash are excluded from this sale. (Id. at ¶¶ 1.1 & 1.5.) Several courts have found that legal claims are cognizable assets. See, e.g., Tyler v. Federal Express Corp., 420 F. Supp.2d 849, 856 (W.D. Tenn. 2005); Heilman v. Heilman, 291 N.W.2d 183, 185 (Mich. Ct. App. 1980) citing Dunlap v. Toledo, Ann Arbor & Grand Trunk R. Co., 15 N.W. 555, 556 (Mich. 1883). Michigan contract law requires that the language of the contract be given its full effect and not be modified by agreements external to the contract. Quality Prods. & Concepts Co. v. Nagel Precision, Inc., 666 N.W.2d 251, 259 (Mich. 2003). Since these legal claims are assets, and all assets related to the business or location were sold, Defendant

argues that Plaintiff no longer can bring these claims because it sold its right to do so.

3.   NIPP Has Sold Its Claims Against City, and Therefore Cannot Bring Them Now

I find NIPP may not bring these claims after it sold its interest in the license. The reason is not one based in traditional notions of standing; it is instead based in sound interpretation of the contract between NIPP and Worldwide. The Purchase Agreement between these parties explicitly states that NIPP is selling "all of the assets, rights, and interests of every conceivable kind or character whatsoever, whether tangible or intangible ... in which [NIPP] has an interest of any kind related to the Business or the Location" to Worldwide. (Def't Supp. Br. Ex. A ¶ 1.1)(emphasis added.) Michigan law has long established that a legal claim is an asset, just like any tangible piece of property. Heilman v. Heilman, 291 N.W.2d 183, 185 (Mich. App. 1980) citing Dunlap v. Toledo, Ann Arbor & Grand Trunk R. Co., 15 N.W. 555, 556 (Mich. 1883). Thus if all assets of NIPP have been transferred to Worldwide, NIPP does not retain the right to bring these legal claims.

The issue then is whether the right to bring this suit was sold under this contract. The only reason this is even a question is the restriction the law imposes upon transfer of liquor licenses and their attendant permits; despite the fact the contract excludes no assets from the sale, if the license itself was excluded from the sale through operation of law, and the legal claims in question are related to NIPP's ownership of the license, and not the "business or location," then the right to bring the suit was not sold according to the terms of the contract and NIPP would have standing.

Michigan law does permit the sale of liquor licenses, however. The relevant statute provides that transfers must be approved by the MLCC. Mich. Comp. Laws Ann. § 436.1529(1)

(West 2007) ("A license or an interest in a license shall not be transferred from 1 person to another without the prior approval of the commission."). While this provision clearly indicates that any transfer of a license must be approved by the MLCC, it also clearly contemplates the legality of transfers that have been so approved. See Roodvoets v. Anscer, 13 N.W.2d 850, 851 (Mich. 1944) (finding that once Michigan changed its liquor laws to permit transfers of licenses with approval of the MLCC, that agreements to sell licenses could not be unenforceable as being contrary to public policy). Thus, since the transfer of this license was approved by all the relevant parties, the sale of the license and the lawsuit connected to it are valid. Therefore, NIPP has effectively assigned its right to bring these claims to Worldwide, and has been compensated for this assignment with some portion of the purchase price paid by Worldwide. The constitutional and prudential issues of standing that dominate the federal courts literature are to be applied to NIPP's right to bring the claims, as Worldwide as the assignee steps into the shoes of the assignor. See, e.g., Vermont Agency of Natural Res's v. United States ex rel. Stevens, 529 U.S. 765, 774 (2000) ("[A]dequate basis for the ... suit ... is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor."); see also Restatement (Second) of Contracts § 336(1) (1981). After such an assignment, NIPP retains no rights to litigate the claims it has assigned away.

Plaintiff's argument that NIPP must be permitted to bring this suit due to the late stage of the litigation is incorrect. "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). When a federal court lacks subject matter jurisdiction, it does not matter in which stage the case exists; the court lacks the power to hear any part of it. Fed. R. Civ. P. 12(h)(3) cited in

Kontrick v. Ryan, 540 U.S. 443, 455 (2004).  It is regrettable that this Court learned of the terms of the Purchase Agreement and Bill of Sale this late in the litigation, but this does not alter its duty to only hear cases over which it has jurisdiction.

Plaintiff's argument that it only mitigates its damages by selling its interest the way it did is also incorrect.  Plaintiff is correct that remedies law generally requires a wronged party to mitigate its damages, but mitigation does not include sale of the legal claim itself.  Therefore, there is no need to find Plaintiff retained the right to continue a suit when it assigned the right it had to bring the claims.  Perhaps if the language of the contract were not as clear that all interests relating to the Royal Oak Music Theater "of every conceivable kind or character whatsoever" were sold, an argument could be made that the right to bring these claims was not sold.  This contractual language, however, makes obvious that NIPP sold everything it had related to this endeavor to Worldwide.  The unambiguous language of a contract is evidence of the parties intent as a matter of law.  Quality Prods. & Concepts Co., 666 N.W.2d at 259.

For these reasons, NIPP in its present state of ownership cannot be permitted to maintain these claims before the Court.

4.      I Permit NIPP to File An Amended Complaint Within Three Weeks

For purposes of judicial efficiency, and because I do not believe it causes any prejudice to City, I will permit NIPP to file an amended complaint within three weeks of this date in order to maintain this suit.  In this amended complaint, NIPP must directly state that it has obtained from Worldwide the right to bring this suit in exchange for good and valuable consideration, and attach to its amended complaint documentation proving it has obtained this right.

There is precedent for permitting an amended complaint late in litigation in order to

8

remedy a standing deficiency.  See, e.g., Intimo, Inc. v. Briefly Stated, Inc., 948 F.Supp. 315, 318 (S.D.N.Y. 1996).  In this case, the court permitted a copyright plaintiff to amend its complaint when it originally brought the claim without owning the right to bring the legal claim on which it was suing, meaning it lacked standing.  In copyright, the law clearly states that the assignee of a copyright only obtains a right to sue that arose when the assignor held the copyright if the right to sue is explicitly transferred to the assignee.  (Id. at 317.)  In Intimo, the assignee of a copyright brought suit for a claim that arose during the assignor's ownership of the copyright without having the right to sue explicitly transferred to it.  The court gave permission to amend the complaint after the assignee obtained the right to sue despite the fact it was very late in the litigation, because such an amendment served the ends of justice and created no prejudice to the defendant since it did not change the issues the parties had been litigating since the case's inception.[5]  (Id. at 318.)  Though this is not a copyright action, and instead of the right to sue failing to transfer to the plaintiff the right to sue has transferred away from the Plaintiff in this case, I still find the reasoning of the court in Intimo sound and apply it to this case.

   NIPP hereby has three weeks from the date of this opinion to file an amended complaint that meets the requirements indicated above.  Should NIPP comply with these requirements, a new scheduling order will issue with hearing dates for the pending motions.  If such document is

---

[5]There is likewise no prejudice to the Defendant in this case by granting Plaintiff the right to amend the complaint.  City has known since at least April 2006 that the only legally cognizable claims that could have arisen from this factual scenario are the due process and equal protection claims NIPP can bring as identified in my previous opinion.  N.I.P.P. Royal Oak, LLC, 420 F. Supp.2d at 795-97.  No change from that situation has occurred.  This standing issue is merely a question of who presently owns the right to bring the suit.  If NIPP can purchase this right back from Worldwide, then the parties would be in the same situation as they believed they were before I asked them to conduct this supplemental briefing, with no harm done to City.  Amendment is therefore the proper remedy to this problem.

not received by this Court within three weeks from this date, this case will be dismissed with prejudice as NIPP will have failed to remedy the deficiency in its standing to bring its claims.

### IV.   CONCLUSION

For the above reasons, I find that NIPP has sold its right to bring these claims, and may only continue to litigate them if it re-obtains the right to bring these claims and then submits an amended complaint to this court indicating it is the present owner of the right to sue.

**IT IS SO ORDERED.**

Date:   January 11, 2007                             s/John Feikens
                                                     United States District Judge

> Proof of Service
>
> I hereby certify that the foregoing order was served on the attorneys/parties of record on January 11, 2007, by U.S. first class mail or electronic means.
>
>                             s/Carol Cohron
>                             Case Manager